1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11
12
13
14
15
16

DANIEL WAYNE GROGAN,

　　　　　Petitioner,

　　v.

CALIFORNIA DEPARTMENT OF
CORRECTIONS,

　　　　　Respondent.

Case No. 2:21-cv-08233-JAK (GJS)

**FINAL REPORT AND
RECOMMENDATION OF
UNITED STATES MAGISTRATE
JUDGE**

17
18
19

This Final Report and Recommendation is submitted to the United States

District Judge John A. Kronstadt, pursuant to 28 U.S.C. § 636 and General Order

No. 05-07 of the United States District Court for the Central District of California.

20
21

## INTRODUCTION

22
23
24
25
26
27

On October 14, 2021, the Clerk's Office received and filed a 28 U.S.C. § 2254

habeas petition submitted by Petitioner, a state prisoner [Dkt. 1"Petition"].  The

Petition stems from his July 23, 2018 conviction in Los Angeles County Superior

Court Case No. MA070720 and related sentence (the "State Conviction").  [Petition

at 2.][1]

28

---

[1]　　Pursuant to Rule 201 of the Federal Rules of Evidence, the Court has reviewed the dockets
available electronically for the Los Angeles County Superior Court, the California Court of
Appeal, and the California Supreme Court.

On December 9, 2021, Respondent filed a motion to dismiss the Petition on the grounds that the Petition failed to name a proper Respondent, is untimely, and does not sufficiently set forth the grounds for relief.  [Dkt. 7, "Motion."]  With the Motion, Respondent lodged the relevant portions of the state docket.  [Dkt. 8, "Lodg."]  On the same day, the Court issued an Order directing briefing on the Motion and advising Petitioner that, if he contends he is entitled to equitable tolling, he must include with his Opposition a sworn declaration setting forth a detailed description of the nature of any alleged extraordinary circumstances and their effect on his ability to seek timely federal habeas relief.  [Dkt. 9, the "December 9 Order".]

Petitioner's Opposition to the Motion was due by January 13, 2022.  As of that date, the Court had not received any such Opposition from Petitioner, nor had it received any request by him for an extension of time.

The Motion, thus, was unopposed.  On February 7, 2022, the Court issued a Report and Recommendation, in which it concluded that the Petition is untimely and recommended that the Motion be granted and this case be dismissed.  [Dkt. 11, "Report."]  On March 4, 2022, Petitioner filed an Objection to the Report.  [Dkt. 12, "Objection."]  In his two-page Objection, Petitioner argues that his failure to timely seek federal habeas relief should be excused under the equitable tolling doctrine and he attaches numerous exhibits that he believes support his argument.

In his Objection, Petitioner does not explain why he failed to file an Opposition to the Motion and, instead, waited to respond to the Motion until *after* the Court had concluded its analysis and issued the Report.  A district court has discretion, but is not required, to consider evidence or arguments presented for the first time in objections to a report and recommendation.  *See Brown v. Roe*, 279 F.3d 742, 744-45 (9th Cir. 2002); *United States v. Howell*, 231 F.3d 615, 621-22 (9th Cir. 2000).  While it is inappropriate for Petitioner to raise his opposition arguments for the first time in an objection to a report and recommendation, the Court nonetheless will exercise its discretion in favor of considering the Objection.

2

The Court now issues this Final Report and Recommendation to address Petitioner's Objection assertions.  The Court again finds that the record clearly shows that the Petition is untimely and that dismissal is warranted on that basis.[2] The Court, therefore, again recommends that the Motion be granted.

## PRIOR PROCEEDINGS

On July 23, 2018, in the State Conviction action Petitioner pleaded no contest to a charge of armed robbery and admitted the truth of firearm use, prior conviction, and prior prison term allegations.  The trial court sentenced Petitioner to a total prison term of 25 years to life.  [Lodg. No. 1 at ECF #183-#184.]

A review of the electronic dockets available for the California Court of Appeal and the California Supreme Court confirms that Petitioner did not appeal his State Conviction and sentence.  Instead, four months after his conviction and sentencing, Petitioner mailed a habeas petition to the trial court on November 24, 2018.[3]  [Lodg. No. 2.]  After appointing counsel for Petitioner, ordering briefing, and conducting an evidentiary hearing, the trial court denied the petition on July 29, 2019.  [Lodg. No. 1 at ECF #189-#196.]

On September 24, 2019, Petitioner filed a habeas petition in the California Court of Appeal.  [Lodg. No. 3.]  On October 24, 2019, the California Court of Appeal denied the petition summarily.  [Lodg. No. 4.]

---

[2]     The Court declines to address Respondent's alternative asserted grounds for dismissal.  While the Petition does fail to name a proper respondent and does not adequately plead the habeas claims for which relief is sought, both of these failures could be rectified with amendment.  Given that this action plainly is untimely, these alternative grounds for dismissal need not be addressed and resolved.

[3]     "Under the 'mailbox rule,' a pro se prisoner's filing of a state habeas petition is deemed filed at the moment the prisoner delivers it to prison authorities for forwarding to the clerk of the court."  *Stillman v. Lamarque*, 319 F.3d 1199, 1201 (9th Cir. 2003); *see also* Rule 3(d) of the Rules Governing Section 2254 Cases in the United States District Courts.  Therefore, giving Petitioner the benefit of the doubt, when the apparent date on which Petitioner mailed any post-conviction petition is available, the Court has used that presumptive date as the "filing" date.

3

Almost five months passed.  On April 15, 2020, the Clerk's Office formally filed a 28 U.S.C. § 2254 habeas petition it had received from Petitioner in Case No. 2:20-cv-03483-JAK (GJS).  On May 8, 2020, District Judge Kronstadt dismissed the action without prejudice, for lack of exhaustion, after Petitioner failed to exercise any of the available options that had been provided to him.  [Lodg. Nos. 7-8.]

Two months later, on July 8, 2020, Petitioner filed a habeas petition in the California Supreme Court.  [Lodg. No. 5.]  On October 14, 2020, the California Supreme Court denied the petition summarily.  [Lodg. No. 6.]

Almost one year later, Petitioner filed the instant Petition.  While the proof of service page attached to the Petition and the Petition's signature page are dated September 26, 2021, Petitioner's cover letter (in which he states that the Petition was mailed on October 7, 2021) and other documents included with the Petition's mailing are dated October 7, 2021, and the envelope in which all of those documents were transmitted bears an October 12, 2021 postmark.  The Court, therefore, will deem the Petition to have been "filed" pursuant to the mailbox rule on October 7, 2021.

## DISCUSSION

Prisoners seeking habeas relief under Section 2254 are subject to a one-year time limit on the filing of petitions, which was adopted to "advance the finality of criminal convictions."  *Mayle v. Felix*, 545 U.S. 644, 662 (2005).  The one-year limitations period is set forth in 28 U.S.C. § 2244(d)(1).  This limitations period is subject to a statutory tolling provision, which suspends it for the time during which a "properly-filed" application for post-conviction or other collateral review is "pending" in state court.  28 U.S.C. § 2244(d)(2).  Additionally, in certain "extraordinary circumstances" beyond a prisoner's control, equitable tolling may be available to toll the limitations period.  *See, e.g., Jorss v. Gomez*, 311 F.3d 1189, 1192 (9th Cir. 2002) ("A petition can also be timely, even if filed after the one-year period has expired, when statutory or equitable tolling applies.").

1    **A. The Accrual, And Running, Of Petitioner's Limitations Period.**

2        Through its subparts (A) through (D), Section 2244(d)(1) contemplates four

3   possible triggering dates for the accrual and commencement of a state prisoner's

4   one-year limitations period.  The Supreme Court has described these as follows:

5            § 2244(d)(1) provides that a "1-year period of limitation
             shall apply to an application for a writ of habeas corpus."
6            (Emphasis added.)  The subsection then provides one
             means of calculating the limitation with regard to the
7            "application" as a whole, § 2244(d)(1)(A) (date of final
             judgment), but three others that require claim-by-claim
8            consideration, § 2244(d)(1)(B) (governmental
             interference); § 2244(d)(1)(C) (new right made
9            retroactive); § 2244(d)(1)(D) (new factual predicate).

10  *Pace v. DiGuglielmo*, 544 U.S. 408, 416 n.6 (2005).

11       Usually, a state prisoner's limitations period will be governed by Section

12  2244(d)(1)(A), and that is the only provision that can govern here based on the facts

13  of record.[4]  Petitioner's judgment became "final," for purposes of Section

14  2244(d)(1)(A), on the date on which his State Conviction became final.  Because

15  Petitioner did not appeal following his July 23, 2018 State Conviction and

16  sentencing, his criminal judgment was final on the date his time for seeking review

17  of his conviction expired, which was 60 days later, *i.e.*, on September 21, 2018.  *See*

18  *Roberts v. Marshall*, 627 F.3d 768, 771 (9th Cir. 2010); Rule 8.308(a) of the

19  California Rules of Court.  Thus, Petitioner's limitations period commenced running

20  on September 22, 2018, and expired on September 21, 2019, absent tolling.

---

[4]      As discussed *infra*, in his Objection, Petitioner raises a circumstance that he claim entitles
him to equitable tolling, namely, his March, 2021, through August 2021 incarceration in his
institution's Administrative Segregation Unit.  In passing, Petitioner characterizes this
circumstance as "governmental interference" and referenced Section 2244(d)(1)(B) without
explanation.  While this circumstance properly may be considered in an equitable tolling analysis,
it cannot serve as a basis for affording Petitioner with a delayed accrual start for his limitations
period, given that it occurred approximately 18 months *after* Petitioner's limitation period would
have expired absent statutory tolling.

1

**B. Statutory Tolling**

2

28 U.S.C. § 2244(d)(2) suspends the limitations period not only for the time

3

during which a "properly-filed" application for post-conviction relief is "pending" in

4

state court but also, in appropriate circumstances, "during the intervals between the

5

denial of a petition by one court and the filing of a new petition at the next level, if

6

there is not undue delay." *Biggs v. Terhune*, 339 F.3d 1045, 1046 (9th Cir. 2003).

7

Continuous tolling under Section 2244(d)(2) – commonly referred to as interval or

8

gap tolling – is available only if a prisoner acted promptly in seeking relief at the

9

next state court level. *See Pace*, 544 U.S. at 413-14.

10

As noted earlier, Petitioner filed two state court habeas petitions, then filed a

11

federal habeas petition which was dismissed, and then finally sought habeas relief in

12

the state high court. That process commenced on November 24, 2018, when

13

Petitioner filed his trial court habeas petition, and concluded on October 14, 2020,

14

when the California Supreme Court denied habeas relief. The Court has some

15

question about whether Petitioner properly may receive gap tolling throughout this

16

entire period of time, but notes that Respondent has assumed so in the Motion. For

17

the sake of argument, the Court will make that assumption, as doing so or not

18

ultimately makes no difference to the timeliness decision.

19

As of November 24, 2018, Petitioner's limitations period has been running for

20

63 days, *i.e.*, from September 22, 2018, through November 23, 2018, the day before

21

Petitioner first sought state habeas relief. If he is deemed to be able to receive

22

Section 2244(d)(2) tolling throughout the entirety of November 24, 2018, through

23

October 14, 2020, then when tolling lifted and Petitioner's limitations period re-

24

commenced running on October 15, 2020, he had 302 days remaining, or until

25

August 12, 2021, in which to timely seek federal habeas relief. As the Petition was

26

"filed" no earlier than October 7, 2021, it was 56 days too late.[5] The Petition, thus,

27

28

[5] Even if Petitioner's September 26, 2021 signature date on the Petition is used, the Petition nonetheless was untimely by 45 days. As set forth above, however, given that his transmittal latter

6

1    is untimely absent equitable tolling.

2

3    **C. Equitable Tolling Is Not Available.**

4         The limitations period for Section 2254 petitions is subject to equitable tolling

5    in appropriate circumstances.  *Holland v. Florida*, 560 U.S. 631, 645-49 (2010).

6    However, application of the equitable tolling doctrine is the exception rather than the

7    norm.  *See, e.g., Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009)

8    (characterizing the Ninth Circuit's "application of the doctrine" as "sparing" and a

9    "rarity"); *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999) ("equitable tolling is

10   unavailable in most cases").  A habeas petitioner may receive equitable tolling only

11   if he "shows '(1) that he has been pursuing his rights diligently, and (2) that some

12   extraordinary circumstance stood in his way' and prevented timely filing."  *Holland*,

13   560 U.S. at 649 (citation omitted); *see also Pace*, 544 U.S. at 418 & n.8.  Both

14   elements must be met.  *Id.* at 418 (finding that the petitioner was not entitled to

15   equitable tolling, because he had not established the requisite diligence).  A

16   petitioner seeking application of the doctrine bears the burden of showing that it

17   should apply to him.  *Id.*; *see also Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (to

18   receive equitable tolling, the petitioner must prove the above two requirements).

19        In order to demonstrate the first requirement for equitable tolling, diligence,

20   the petitioner must show that "he has been reasonably diligent in pursuing his rights

21   not only while an impediment to filing caused by an extraordinary circumstance

22   existed, but before and after as well, up to the time of filing his claim in federal

23   court."  *Smith v. Davis*, 953 F.3d 582, 598-99 (9th Cir. 2020) (en banc).

24        The second equitable tolling requirement is a causation requirement.  *Davis*,

25   953 F.3d at 597, 600.  A petitioner must establish not only the existence of an

26   extraordinary circumstance but also that it was, in fact, the cause of the untimely

27

28   and other documents sent with the Petition are dated October 7, 2021, that date is a more
     appropriate "filed" date under the mailbox rule.

filing of the federal habeas petition.  *See Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003); *see also Bryant v. Arizona Att. Gen.*, 499 F.3d 1056, 1061 (9th Cir. 2007) (a petitioner must show that the claimed extraordinary circumstances were the cause of his untimeliness); *Roy v. Lampert*, 465 F.3d 964, 969 (9th Cir. 2006) (the extraordinary circumstance claimed must be the cause of the petition's untimeliness).  "[I]t is only when an extraordinary circumstance prevented a petitioner acting with reasonable diligence from making a timely filing that equitable tolling may be the proper remedy."  *Davis*, 953 F.3d at 600.  "A petitioner must show that his untimeliness was caused by an external impediment and not by his own lack of diligence."  *Bryant*, 499 F.3d at 1061.

Despite the December 9 Order advising Petitioner of the equitable tolling doctrine and what he must do to invoke it, Petitioner did not oppose the Motion. Instead, Petitioner waited until after the Court issued its Report and Recommendation to first raise the following equitable tolling argument, without offering any explanation for his failure to oppose the Motion.  In his Objection, Petitioner contends that he is entitled to receive equitable tolling, because he was "in the hole" from March 1, 2021, through August 25, 2021.  He asserts that, during that approximately six months long period of time, he lacked access to any of his legal paperwork, had no ability to obtain the Court's address, and had nothing more than a bible with him.  He contend that, as a result, it was "impracticable" and "impossible" for him to file a timely federal habeas petition.

Petitioner's assertions are not made under penalty of perjury, and thus, lack evidentiary value except to the extent they are corroborated by the documents he has attached to the Objection.  These documents show that Petitioner was not "in the hole," as he asserts but, rather, was placed in his institution's Administrative Segregation Unit ("ASU") on March 1, 2021, and was returned to general population on August 25, 2021.  Petitioner was placed in the ASU due to a pending charge that he committed an act of misconduct, namely, battery with a weapon capable of

causing serious injury, which had been referred to the local District Attorney's Office for possible criminal prosecution.  [Objection at 3, 6, 8-9, 12.]  On the date Petitioner was placed in the ASU, his personal property he was "authorized to retain" was inventoried, and the inventory listed various personal items and a "bag of misc. paperwork."  [*Id.* at 13.]  The remainder of the documents attached to the Objection consist of an incident report package for the battery charge and a copy of the Court's Report and Recommendation in this case.

Contrary to Petitioner's assertion, the documents he has appended to his unsworn Objection do not establish that he lacked access to legal paperwork or court addresses during the six months he spent in the ASU.  Under 15 CCR § 3343(a), prisoners in the ASU are to be afforded confinement conditions that "approximate those of the general population" consistent with security and safety issues.  Under Section 3343(i), ASU inmates are permitted to obtain and possess the same reading materials as general population inmates, although the quantity may be limited for safety and security reasons.  Under Section 3343(k), ASU inmates "shall be permitted to participate in and have access to" institutional programs, including "library services," again as is consistent with security and safety issues.[6]  "California prisons allow prisoners to check out library materials and, if in segregated housing, to use a legal paging system to request materials for in-cell study if they cannot attend the library."  *Lara v. Yates*, No. C 06-3138 MHP, 2010 WL 760486, at *6 (N.D. Cal. Mar. 4, 2010); *Dossman v. Newland*, No. C 00-384 SI, 2009 WL 1357455, at *5 (N.D. Cal. May 13, 2009) (same).  Under 15 CCR § 3123(c), when an inmate is unable to physically access the law library, he may request that library staff deliver legal materials to him through "law library paging."  Law library paging

---

[6]     *See also* 15 CCR § 3164(c) ("Inmates who are housed in any restricted unit and who are not serving a period of disciplinary detention may possess and have access to any legal resource material available to the general population and may assist each other in their legal work to the extent compatible with institution security."; and 15 CCR § 3164(d) ("An inmate in a restricted housing unit may have access to an inmate law library subject to the provisions of section 3123.").

is available to inmates who have been suspended from physical law library access pending investigation of a serious rule violation and library staff must deliver paged materials within 16 calendar days.  15 CCR § 3123(c)(3) & (e).  Thus, had Petitioner needed to obtain this Court's address or conduct any legal research, he could have done so through the legal paging system available to him.  There is no evidence that he made any such effort during his time confined in the ASU.

In addition, there is no evidence that Petitioner was precluded from having legal materials in his cell in the ASU.  Even if an inmate's property is inventoried and placed in storage (such as in Receiving and Release) when he is transferred into an ASU, he is permitted to have up to one cubic foot of legal materials in his cell at any given time and can submit a legal property request to the storage department to obtain his legal materials.  *See Asberry v. Cate*, No. 2:11-cv-2462-KJM KJN, 2013 WL 3490724, at *2 (E.D. Cal. July 10, 2013); *see also* 15 CCR § 3191 (in addition to their allotted cubic space for personal property, inmates are allowed an extra cubic foot for legal materials).  Even if Petitioner's legal materials were placed in storage on March 1, 2021, when he first was placed in the ASU, there is no evidence that Petitioner ever asked to have any of them retrieved to be kept and used in his cell.

Indeed, Petitioner does not contend that he ever asked to receive his legal materials and was denied, or that he attempted to use the law library paging system available to him but did not receive requested materials or information.  Petitioner fails entirely to provide any details of any specific action he took during his time in the ASU.  Petitioner's sole unsworn and unsupported statement that, for six months, he had nothing more than his bible available to him is not sufficient to meet his burden of proving that he was subjected to an extraordinary circumstance during this period of time that rendered it impossible for him to seek federal habeas relief.[7]  Nor

---

[7]     The Court has not addressed the question, raised in some cases, of whether placement in the ASU due to the commission of a disciplinary offense *can* satisfy the requirement that an extraordinary circumstance be beyond the petitioner's control.  *See, e.g., Davis v. C.C.I. Tehachapi Warden*, No. CV 17-00131-DSF (KES), 2017 WL 901884, at *7 (C.D. Cal. Mar. 6, 2017)

1    is this bare assertion – bereft of an indication that Petitioner made any effort to

2    exercise the rights actually available to him, even if more limited than those in

3    general population – sufficient to establish equitable tolling's diligence requirement.

4        As the Ninth Circuit made abundantly clear in *Smith v. Davis*, *supra*, equitable

5    tolling is not available unless a petitioner was reasonably diligent in pursuing his

6    rights not only during the pendency of the alleged extraordinary circumstance "but

7    before and after as well."  953 F.3d at 598-99; *see also id.* at 599 n.9 (describing the

8    foregoing "rule" as one that "requires an evaluation of a petitioner's diligence across

9    the whole time involved").  Apart from Petitioner's failure to make any effort during

10   his ASU stint to take even the minimal steps needed to seek federal habeas relief, he

11   has not proffered any explanation for having done nothing during the preceding four

12   and a half months, *i.e.,* once the California Supreme Court denied habeas relief on

13   October 14, 2020, and Petitioner had over four months before being placed in the

14   ASU.  Petitioner already had filed a federal habeas petition in April 2020, in Case

15   No. 2:20-cv-03483-JAK (GJS) (as discussed above), and there is no apparent reason

16   why, after the California Supreme Court denied relief, he could not have simply re-

17   filed his prior federal petition or a version of his state high court petition in this

18   Court.  Critically, in its April 16, 2020 Order in the prior federal case advising

19   Petitioner of the unexhausted nature of his federal petition and advising him that he

20   could seek a *Rhines* stay, the Court expressly cautioned Petitioner that if the case

21   were to be dismissed, any subsequent federal habeas petition he filed could be

22   untimely under Section 2244(d)(1).  Nonetheless, Petitioner ignored the stay option

24   (observing that, in light of this requirement, "[s]ome district courts have . . . concluded that
25   equitable tolling is not available if a petitioner was placed in the ASU or SHU because of his own
     misconduct," and discussing contrasting views).  Here, the Objection makes it clear that Petitioner
26   vigorously disputes his guilt in connection with the battery charge that led to his ASU placement
     and there is no evidence of record that he ever suffered a disciplinary conviction for that charge.
27   In any event, the Court need not resolve the foregoing question in this case, because regardless of
     whether or not an "at fault" ASU placement qualifies as an extraordinary circumstance as an
28   abstract matter, under the facts here, there is no basis for finding that it did.

offered to him and caused the case to be dismissed, despite knowing that he could face a timeliness problem in the future. Under those circumstances, it was incumbent upon Petitioner to exercise reasonable diligence going forward, yet he did not do so. Thus, even if Petitioner's ASU stint could be an "extraordinary circumstance," his lack of diligence dooms his equitable tolling argument.

Under these circumstances, the Court cannot conclude that both requirements for application of the equitable tolling doctrine are met. As a result, equitable tolling is not available in this case and the Petition remains untimely. Accordingly, the Motion should be granted, and this action should be dismissed with prejudice.

## RECOMMENDATION

For all of the foregoing reasons, IT IS RECOMMENDED that the Court issue an Order: (1) accepting this Final Report and Recommendation; (2) granting the Motion; (3) dismissing the Petition as untimely; and (4) directing that Judgment be entered dismissing this action with prejudice.

DATED: March 25, 2022

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE

## NOTICE

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules and review by the District Judge whose initials appear in the docket number. No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.